IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| INSUN KIM, ) | CIVIL ACTION NO. 9:16-0823-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff files this pro se[1] Complaint pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. The record reflects that Plaintiff applied for Disability Insurance Benefits (DIB)[2] and Supplemental Security Income (SSI)[3] on December 12, 2014 (protective filing date), alleging disability as of August 16, 2001 due to anxiety disorder, depression, and a back problem. (R.pp. 13, 219, 227, 249). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a

---

[1] The federal courts are charged with liberally construing complaints filed by pro se litigants, so as to allow them to fully develop potentially meritorious cases. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519 (1972). As such, the undersigned has liberally construed Plaintiff's Complaint, Brief, and attachments to her Complaint in evaluating her claims.

[2] Plaintiff was last insured for purposes of receiving DIB on December 31, 2007. (R.p. 15). Therefore, in order to be eligible for DIB, she must show that she was disabled on or before that date. Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005).

[3] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



hearing before an Administrative Law Judge (ALJ),[4] which was held on November 4, 2015. (R.pp. 29-84). The ALJ thereafter denied Plaintiff's claims in a decision issued December 14, 2015. (R.pp. 13-23). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).

The Plaintiff then filed this action in United States District Court. Plaintiff appears to assert that there is not substantial evidence to support the ALJ's decision, and that she should therefore be awarded both DIB and SSI benefits, as well as $365,000,000.[5] See Complaint, ECF No. 1 at 15; Plaintiff's Brief, ECF No. 32 at 6. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct**

---

[4]Although Plaintiff is currently proceeding pro se, she was represented by an attorney at the hearing before the ALJ through the time of the ALJ's decision. (See R.p. 8-9, 31, 203-204).

[5]Plaintiff appears to allege that she is entitled to monetary damages for the denial to her of disability benefits. This claim is discussed further below, infra.



**a verdict were the case before a jury, then there is "substantial evidence."**
[emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Medical History

Although Plaintiff alleges disability since 2001, the treatment records provided are only from 2014 forward. According to these records, Dr. Ruth S. DeHaven of St. Andrews Medical began treating Plaintiff in 2013. (See R.p. 340). On January 6, 2014, Plaintiff requested medication changes, at which time Dr. DeHaven noted that Plaintiff was generally healthy, had no change in strength or exercise tolerance, no headaches, no pain in her muscles or joints, no limitation of her range of motion, and no paresthesias or numbness. Dr. DeHaven assessed Plaintiff with depression and anxiety and prescribed trials of Effexor, Xanax, and Lasix. (R.p. 330).

On October 6, 2014, Plaintiff reported to Dr. DeHaven that she had been in a car accident the previous month,[5] was afraid to drive fast or in congested areas, had no pain at the time of the accident, but at the time of the appointment felt "like everything hurts." Examination revealed

---

[5]Plaintiff asserts that she was in a head-on collision on September 7, 2014. Plaintiff's Brief, ECF No. 32 at 3.



that Plaintiff was in no acute distress, her back had no tenderness, and her extremities had free range of motion with no deformities. Dr. DeHaven assessed weight gain, motor vehicle accident, and "panic." (R.p. 329).

On December 5, 2014, Plaintiff reported that she did "nothing but lie around at home." She requested x-rays of her entire spine and to see a psychiatrist for her nerves. Dr. DeHaven assessed Plaintiff with anxiety, depression, and back pain by history, gave Plaintiff a slip to get x-rays taken, and planned to find a psychiatrist who would take Plaintiff's insurance. (R.p. 354). That same day, x-rays were taken of Plaintiff's cervical, thoracic, and lumbar spines. Cervical spine x-rays showed no fracture, subluxation, or significant disc space narrowing, and no prevertebral soft tissue swelling. (R.p. 336). X-rays of Plaintiff's thoracic spine showed mild curvature of her lower thoracic spine, but no fracture or abnormal alignment. (R.p. 334). Lumbosacral x-rays showed no fracture, subluxation, or significant disc space narrowing; no pars defects were present, and her SI joints appeared within normal limits. (R.p. 335).

On January 14, 2015, Dr. DeHaven completed an RFC Functional Capacity Questionnaire in which she opined that Plaintiff could sit for sixty minutes at a time; stand/walk for forty-five minutes at a time; sit for a total of eight hours in an eight-hour workday; stand/walk for a total of eight hours in an eight-hour day; frequently lift up to twenty pounds; occasionally lift up to fifty pounds; and work an eight-hour day, five days a week, on a sustained basis. Dr. DeHaven also opined that Plaintiff's symptoms associated with her impairments would never be severe enough to interfere with the attention and concentration required to perform simple work-related tasks; that Plaintiff would not need to take unscheduled breaks during an eight-hour workday; and that Plaintiff could walk four city blocks without rest or significant pain. (R.pp. 338-340).

4



On January 27, 2015, Dr. DeHaven noted that Plaintiff was generally healthy, with no change in strength or exercise tolerance. Dr. DeHaven assessed borderline thyroid function and borderline hypertension, and planned to check Plaintiff's blood work and write prescriptions after the lab work was returned. (R.p. 353). Plaintiff also underwent physical therapy at Private Therapy Services in January 2015. (R.pp. 359-367).

Plaintiff sought treatment at Fetter Health Care Downtown on February 9, 2015, for complaints of body pain and fatigue. Although Plaintiff said she was there to have a disability form completed, there is no evidence in the record that such a form was completed. (R.p. 373). Thereafter, on March 6, 2015, psychologist Dr. Cashton B. Spivey performed a consultative evaluation. Plaintiff stated that she took Wellbutrin, BuSpar, Xanax, and Effexor; had a history of a head injury with loss of consciousness (for which she stated no CT scan or x-rays were performed); had headaches; did not have memory deficits; and had not been hospitalized in a psychiatric facility or participated in outpatient psychological services for her mental impairments. Plaintiff complained of dysphoria, low energy level, attention/concentration problems, crying spells, generalized anxiety, ruminations, nightmares, intrusive thoughts, symbolic recollections of a traumatic event, and exaggerated startle response. As to activities of daily living, Plaintiff lived with her thirteen-year old daughter and her daughter's father, bathed and dressed independently, used a microwave oven, operated an automobile on an infrequent basis, was able to read a newspaper, performed household duties and chores with the assistance of her daughter or her daughter's father, performed grocery shopping, and drove her daughter to school in the morning and home in the afternoon.

Dr. Spivey noted that Plaintiff was appropriately dressed and groomed, and was cooperative and compliant during the evaluation. Plaintiff scored 27 out of 30 points on a mini-



5

mental state examination, which fell within normal limits; she was oriented times three; and she was able to perform serial 7s. Dr. Spivey noted that Plaintiff was only able to recall 1 of 3 objects at 5 minutes, suggesting mild impairment of her short-term auditory memory functioning, and estimated that Plaintiff's general intelligence score would fall in the low average range. Plaintiff's energy appeared to be satisfactory, her attention ranged from fair to poor, and her concentration was fair. Dr. Spivey diagnosed unspecified depressive disorder, unspecified anxiety disorder, and PTSD, and opined that Plaintiff would be capable of managing funds independently and accurately, would be capable of performing simple and complex tasks in the workplace, and did not appear to have any significant factors that would preclude her ability to relate well to others in the workplace. (R.pp. 368-371).

Plaintiff returned to Dr. DeHaven on May 26, 2015, at which time she requested Oxycontin for pain "everywhere". She wanted to have her teeth pulled and to get implants from a local dentist, complained she had arthritis and could hardly get out of bed, and stated she did not like the physical therapy she was undergoing. Plaintiff reported she had stopped her thyroid medications because they caused her to gain weight, and although she had been taking Effexor and Wellbutrin, she was out of her medications. Plaintiff reported no headaches and no neurologic weakness, and Dr. DeHaven noted that Plaintiff was in no apparent distress, her teeth were in poor repair with cavities at the gingival level and below, she had no tenderness of her back, and she had full range of motion in her extremities. Dr. DeHaven assessed dental cares, depression, joint pains, and environmental allergies; ordered blood work; refilled prescriptions for Wellbutrin and Allegra A; referred Plaintiff to pain management associates; and noted that a local dentist would manage Plaintiff's teeth. (R.pp. 376-378).



6

**Discussion**

Plaintiff, who was only thirty-seven years old at the time she alleges she became disabled, and fifty-two years old at the time of the ALJ's decision, has a high school education and past relevant work experience as a customer service clerk and a waitress. (R.pp. 21, 227, 250, 368). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, with respect to her claim for DIB, Plaintiff did not have a "severe" impairment [6] or combination of impairments prior to her last date insured (December 31, 2007). (R.p. 15). As for Plaintiff's SSI claim, the ALJ found that, although (as of December 12, 2014) Plaintiff does suffer from the "severe" impairments of spine disorder (cervical, thoracic, and lumbar), unspecified depressive disorder, and unspecified anxiety disorder along with post-traumatic stress disorder (PTSD) (R.p. 16), she nevertheless retained the residual functional capacity (RFC) to perform light work[7] with certain limitations (R.p. 17), and was therefore not entitled to SSI benefits.

Specifically, the ALJ found that Plaintiff could lift or carry up to ten pounds frequently and twenty pounds occasionally; sit, stand, and walk for six hours; frequently reach and handle

---

[6]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).



(bilaterally); frequently climb ramps and stairs; occasionally stoop, kneel, and crouch; never crawl, climb ladders, climb ropes, or climb scaffolds; could not be exposed to unprotected heights; and could not operate a vehicle at work. Additionally, the ALJ found that Plaintiff could perform simple and routine tasks; although with regard to use of judgment and dealing with changes in the work setting, she would be limited to simple work-related decisions. She would also be limited to only occasional interaction with supervisors, coworkers, and the public. (R.p. 18). At step four, the ALJ found that Plaintiff could not perform any of her past relevant work with these limitations. (R.p. 21). However, the ALJ obtained testimony from a vocational expert (VE) and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with this RFC, and was therefore not disabled during the time period at issue. (R.pp. 21-23).

In this pro se lawsuit, and giving Plaintiff's pleadings the liberal construction to which she is entitled as a pro se litigant, Plaintiff appears to assert that in reaching this decision the ALJ erred with respect to his assessment of her limitations from depression and from her motor vehicle accident, with respect to the weight he gave the opinion evidence (opinions from Dr. DeHaven and Dr. Spivey), and in his evaluation of her subjective complaints. However, after careful review and consideration of the evidence and arguments presented, the Court finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision must therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

First, with respect to the ALJ's evaluation of her subjective complaints, Plaintiff argues that her "intelligent, articulate character has zero to do with her disabling issues of the



underlying depression." See ECF No. 32 at 5.[8] However, a review of the decision reveals that the ALJ considered the entire record in reaching his conclusion that, although Plaintiff did have medically determinable impairments that could reasonably be expected to cause some of her alleged symptoms, for the reasons explained in the decision her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R.pp. 18, 20). This was the proper analytical framework for the ALJ to have followed in evaluating Plaintiff's subjective testimony. See 20 C.F.R. §§ 404.1529(b)-(c); SSR 96–7p,[9] 1996 WL 374186, at *2 [Where a claimant seeks to rely on subjective evidence to prove the severity of her symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

In particular, the ALJ noted that although Plaintiff reported constant back pain, radiographic imaging was normal, that Plaintiff retained full range of motion in her extremities, and she had no tenderness on palpation in her spine. Plaintiff's blood work also did not reveal any possible underlying cause for Plaintiff's reported joint pain to her primary care provider. Moreover,

---

[8] At one point in his decision, the ALJ noted that Plaintiff "presented at the hearing as a polite, intelligent and articulate individual". (R.p. 21).

[9] Subsequent to the ALJ's decision in this case, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Social Security Ruling 16-3p eliminates the use of the term " 'credibility' from ... sub-regulatory policy" and "clarif[ies] that subjective symptom evaluation is not an examination of an individual's character." Id. at *1. However, because SSR 96-7p was in effect at the time of ALJ's decision, this Court has reviewed the decision under SSR 96-7p. See Keefer v. Colvin, 2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016). In any event, although SSR 16-3p eliminates the assessment of credibility, it still requires assessment of most of the same factors to be considered under SSR 96-7p.



despite Plaintiff's claims of disabling physical and mental impairments beginning in August 2001, her treatment record indicates very little treatment prior to the time Plaintiff's DIB application was filed in December 2014. The ALJ further noted that although Plaintiff reported panic attacks, no such symptoms were observed by the medical providers and she had not sought urgent or emergent care for any such condition. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]. Although Plaintiff reported that she could not drive because of her panic attacks, she was able to drive to her doctor's appointments and consultative examination. (R.p. 20). Additionally, the ALJ noted that although Plaintiff claimed she had self-isolating behaviors, she was able to go grocery shopping for two hours at a time without anyone accompanying her. (R.pp. 20, 272).

With respect to Plaintiff's contention (liberally construing her arguments) that the ALJ improperly discounted her testimony concerning the effects of her depression because Plaintiff "presented at the hearing as a polite, intelligent and articulate individual;" (R.p. 21, ECF No. 5); the Court can discern no reversible error in the ALJ having made this statement. While an "ALJ may not solely base a credibility determination on his observations at a hearing [,] ... the ALJ may include these observations in his credibility determination." Massey v. Astrue, C.A. No. 3:10-2943-TMC, 2012 WL 909617, at *4 (D.S.C. Mar. 16, 2012) (citing Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir. 1990)[stating that basing a credibility determination *solely* upon hearing observations is improper]); see also Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) [stating that observations at a hearing may be used in part in making a credibility determination]; SSR 96-7p, 1996 WL 374186, at *8 [ALJ may consider personal observations of a claimant but may not accept or reject the



claimant's complaints solely on the basis of such personal observations].[10] Here, it is clear that the ALJ discounted Plaintiff's allegations concerning her anxiety and depression based on her treatment records, the medical source statement from Plaintiff's treating physician, and the findings of the consultative examiner, as well as in part due to inconsistencies between Plaintiff's allegations and her reported level of activity and the medical records. (R.pp. 18- 21). There is no indication from a plain reading of the decision that the ALJ based his decision solely on his observations of the Plaintiff at the hearing. Additionally, while not finding Plaintiff entirely credible, the ALJ did also conclude that she had more mental limitations than were opined to by the treating and examining medical providers, and specifically stated:

> The limitation to the performing of simple and routine tasks, the limitation with regard to use of judgment and dealing with changes in the work setting to simple work related decisions and a limitation to occasional interaction with supervisors, coworkers, and the public, is consistent with the evidence in the record as a whole, and fairly addresses and defines the claimant's limitations arising from her impairments; specifically to accommodate the claimant's allegations of concentration limitations and her reported difficulty being around others.

(R.p. 21).

In sum, the ALJ discounted Plaintiff's subjective complaints based on the *entire record* including his findings concerning Plaintiff's subjective complaints, and based on these findings limited Plaintiff to performing no more than the limited range of light work set forth in the decision. (R.pp. 18-21). Again, this was the proper framework for the ALJ to have followed in evaluating Plaintiff's claims. Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity

---

[10] As noted above, SSR 96-7p has been superseded by SSR 16-3p, but the ALJ issued his decision prior to the effective date of SSR 16-3p. In any event, SSR 16-3p provides that an ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." 2016 WL 1119029, at *7. The ALJ's analysis complied with this ruling.



11

of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. Further, while objective evidence supporting a claimant's subjective allegations is not required; cf. Lewis v. Berryhill, 858 F.3d 858, 865-866 (4th Cir. 2017)[reciting the two-step analysis for considering a claimant's subjective statements, but finding that the ALJ's determination that objective medical evidence was required to support the claimant's evidence of pain intensity improperly increased the claimant's burden of proof]; when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; see SSR 96–7p, 1996 WL 374186, at *1; Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; and after a careful review of the record and evidence in this case, the Court can find no reversible error in the ALJ's treatment of the subjective testimony given by the Plaintiff. Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant."](citing SSR 96-7p); Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]. This claim is therefore without merit.

      The ALJ's RFC determination is also supported by substantial evidence. RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R.



§ 404.1545(a)(1). In SSR 96-8p, RFC is defined as a function-by-function assessment of an individual's physical and mental capacities to do sustained, work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours per day, five days per week, or the equivalent. SSR 96-8p, 1996 WL 374184. An RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations);" Id. at *7; and "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013).

Here, the ALJ properly evaluated Plaintiff's RFC by including in his decision a narrative discussion of the medical and nonmedical evidence leading to his conclusion that Plaintiff had the RFC to perform a limited range of light work. (R.pp. 18-21). See Knox v. Astrue, 327 F. App'x 652, 657 (7th Cir. 2009) ["[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Osgar v. Barnhart, No. 02–2552, 2004 WL 3751471, at *5 (D.S.C. Mar. 29, 2004). In doing so, the ALJ specifically explained why he did not credit the contradictory evidence in the record including the opinion evidence. Lyall v. Chater, No. 94-2395, 1995 WL 417654, at * 1 (4th Cir. 1995)[Finding no error where the ALJ's analysis "was sufficiently comprehensive as to permit appellate review"]. There are no medical records before Plaintiff's date last insured, while after that date the medical records support the ALJ's finding that Plaintiff could perform a range of light work despite her impairments.



As noted by the ALJ, x-rays of Plaintiff's back in December 2014 were normal; (R.pp. 19, 334-336); her blood work did not reveal any possible underlying cause for her complaints of joint pain; (R.pp. 20, 374-375); and physical examinations by Dr. DeHaven were generally unremarkable and showed no tenderness in her back with full range of motion in her extremities. These examinations also do not contain any abnormal mental status examination findings. (R.pp. 19, 329-330, 333, 353, 376). Although Dr. Spivey appears to have diagnosed PTSD based on Plaintiff's subjective complaints, he also noted that Plaintiff scored within normal limits on a Mental Status examination; (R.p. 19, 370); and despite Plaintiff's reported pain, her medical providers treated her conservatively, there is no indication any narcotics (despite Plaintiff's requests for such) or other strong pain medications were prescribed, and Plaintiff reported that she took only over-the-counter medications for pain. (See R.p. 20).

Additionally, there is no indication that any of Plaintiff's treating or examining physicians ever opined that Plaintiff was disabled or placed any restrictions on her ability to work that were greater than the RFC found by the ALJ. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)[finding that no where physician opined that the claimant was totally and permanently disabled supported a finding of no disability]; see also Craig, 76 F.3d at 589-590 [Noting importance of treating physician opinion]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. Plaintiff's treating physician, Dr. DeHaven, indicated that Plaintiff could perform light work, and the ALJ found that the RFC opined to by Plaintiff's treating physician was generally supported by the medical source statement from Plaintiff's treating physician. Even so, it is readily



apparent that the ALJ gave Plaintiff every benefit of the doubt by placing additional limitations on Plaintiff's activities to accommodate for some of Plaintiff's subjective complaints. (R.p. 21).

The ALJ also considered Dr. Spivey's opinion that Plaintiff could understand simple and complex instructions, could perform simple and complex tasks in the workplace, did not have any significant factors that would preclude her from relating well to others in the workplace, had satisfactory energy level, and had fair concentration. (R.p. 19). In giving Dr. Spivey's opinion significant weight, the ALJ properly noted that Dr. Spivey performed a relatively thorough examination, that his opinion was uncontradicted, that Dr. Spivey is a specialist in psychology such that he is qualified to offer an opinion concerning Plaintiff's condition, and that his opinion was consistent with Plaintiff's course of treatment. (R.p. 20). See 20 C.F.R. § 404.1527(d)(5) (2001) [opinion of a specialist about medical issues related to his or her area of specialty are entitled to more weight than the opinion of a physician who is not a specialist].

Finally, Plaintiff also appears to assert that because her impairments prevent her from performing her past relevant work as a waitress, she is therefore entitled to benefits. However, this assertion does not entitle Plaintiff to benefits. The ALJ also specifically found that Plaintiff could not perform her past relevant work as either a waitress or a customer service representative with her impairments, thereby agreeing with the Plaintiff on this point. (R.p. 21). However, the ALJ then continued with the sequential evaluation process and obtained testimony from a VE to determine whether there were other jobs in the national economy that Plaintiff could perform despite her impairments. (R.pp. 21-22). As noted, the VE testified to a number of other jobs Plaintiff could perform with her limitations. (R.pp. 22, 74). Therefore, the ALJ did not commit any reversible error



by failing to find Plaintiff was disabled just because she could no longer perform her past relevant work.

The duty to consider the evidence and resolve any conflicts in that evidence rests with the ALJ: not with the Plaintiff, and not with this Court. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ["In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence."]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. As such, to the extent Plaintiff is arguing that the evidence could support a different finding in this case, this Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), adopted by, 2012 WL 999155 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; see also Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either w ay without interference by the Courts"]. Considered pursuant to the applicable standard of review, the Court finds that there is substantial evidence in the case record to support the ALJ's conclusion that Plaintiff was able to perform light work with the restrictions noted during the relevant time period, and Plaintiff's contention that the ALJ failed to properly evaluate the evidence in making his findings is therefore without merit. Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If



the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; see also Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that she has a disabling impairment].

**Request for Monetary Damages**

In addition to asking for an award of DIB and SSI benefits, Plaintiff also requests that she be awarded monetary damages. As such (again, liberally construed), she appears to be attempting to bring claims pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq.

Plaintiff submitted an Application to Proceed Without Prepayment of Fees and Affidavit (Form AO 240), which was construed as a Motion for Leave to Proceed in forma pauperis, see 28 U.S.C. § 1915, and which was granted. See ECF Nos. 4, 11. Section 1915 permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit. However, to protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992). Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed sua sponte. Neitzke v. Williams, 490 U.S. 319 (1989). Further, while this Court is also required to liberally construe pro se documents, holding them to a less stringent standard than those drafted by attorneys, Erickson v. Pardus, 551 U.S. 89, 94 (2007)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), the requirement of liberal construction does not mean that the Court can ignore a clear failure



in the pleading to allege facts which set forth a claim currently cognizable in a federal court. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir.1990). Such is the case here with respect to any claim for monetary damages.

It is well settled that the United States and its agencies are immune from suit, absent waiver. See FDIC v. Meyer, 510 U.S. 471, 475 (1994). The Social Security Act waives the Social Security Administration's (SSA) sovereign immunity in only limited circumstances. Specifically with respect to claims arising under Title II of the Social Security Act, "Federal Old–Age, Survivors, and Disability Insurance Benefits", federal courts may review "final decisions" of the SSA. See 42 U.S.C. §§ 405(g) & (h). Section 405(g) of the Act provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days" after notice of the decision. However, Section 405(h) limits judicial review to the review permitted under § 405(g), and directs: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).

The Fourth Circuit has observed: "Congress has directed that there be judicial review of the [Commissioner's] actions, but such review is the exclusive remedy and is clearly set forth in § 405(g)." Jarrett v. United States, 874 F.2d 201, 204 (4th Cir. 1989). Furthermore, the Supreme Court has stated that 42 U.S.C. § 405(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'" Califano v. Sanders, 430 U.S. 99, 108



(1977).[11] Here, Plaintiff has been allowed review pursuant to § 405(g), and any additional claims for monetary damages under the FTCA against the Commissioner of the SSA are barred by the exclusivity provision of 42 U.S.C. § 405(h). See Jarrett v. United States, 874 F.2d at 202, 204 [holding that § 405(h) barred a cause of action under the FTCA for intentional infliction of emotional distress based on wrongful termination of Social Security benefits]; Hooker v. U.S. Dep't of Health & Human Servs., 858 F.2d 525 (9th Cir. 1988)[holding that § 405(h) barred a cause of action under the FTCA based on wrongful termination of Social Security benefits, which allegedly caused claimant's suicide].

Additionally, any such claims are also subject to dismissal because Plaintiff has not alleged that she exhausted her administrative remedies under the FTCA. Before an individual can bring an action for money damages against a federal agency under the FTCA, she must "first present the claim to the appropriate Federal agency and [her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The requirement of filing a claim under 28 U.S.C. § 2675(a) is jurisdictional and cannot be waived. See Pyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990); GAF Corp. v. United States, 818 F.2d 901, 917-920 (D.C. Cir. 1987). Therefore, any claims for monetary damages Plaintiff is, or may be attempting, to bring under the FTCA are subject to dismissal.

---

[11]Plaintiff has also attached documents that appear to relate to applications she may have filed with the South Carolina Department of Social Services for Financial Independence and/or SNAP benefits, however, none of these persons or entities are Defendants here. Moreover, even if Plaintiff were to attempt to amend her Complaint to add such persons or entities as defendants, such attempt would be futile because the FTCA generally authorizes suits against the United States for damages for personal injuries or property caused by the negligent or wrongful acts or omissions of an employee of the United States while acting within the scope of his office or employment. See 28 U.S.C. §§ 1346(b), 2671. Hence, a suit under the FTCA lies only against the United States. See Sheridan v. Rendell, 465 F. Supp. 2d 528, 531 (D.S.C. 2006).



**Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Considered under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is **ordered** that the decision of the Commissioner is **affirmed**. Additionally, to the extent that Plaintiff is attempting to assert claims under the FTCA, it is **ordered** that such claims are **denied and dismissed without prejudice**.

**IT IS SO ORDERED**.

July 7, 2017  
Charleston, South Carolina

Bristow Marchant  
United States Magistrate Judge

**The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure**

